# **EXHIBIT C**

RLF1 3521668v.1



December 11, 2009

**STRICTLY CONFIDENTIAL**

Howard B. Johnson
President and CFO
Vion Pharmaceuticals, Inc.
4 Science Park
New Haven, CT 06511

RE: Engagement Agreement

Dear Mr. Johnson:

We are pleased to submit this letter of agreement (the "Agreement") which confirms the understanding between Vion Pharmaceuticals, Inc. ("Vion" or the "Company") and Roth Capital Partners, LLC ("Roth"), with respect to the services described below. This letter agreement sets forth our agreement with respect to the matters set forth herein.

1. **Scope of Services**

In connection with this engagement, Roth will perform one or more of the following services:

(a) Sale Advisory Services. Roth will advise and assist the Company with respect to (i) identifying potential acquirers and evaluating, prioritizing, and negotiating proposals to sell (including, if applicable, by auction) the Company, in whole or in part by purchase, merger, including a reverse merger, consolidation and other business combinations involving all or a substantial amount of the business, securities, and/or assets of the Company (a "Sale Transaction"). Roth will assess the proposed structures for the Sale Transaction(s) and will offer the Company guidance in negotiating the terms of the Sale Transaction(s). Roth will assist the Company in managing the process and closing the Sale Transaction(s), including formulating and presenting responses and counteroffers, conducting due diligence, and documenting the Sale Transaction(s).

(b) Restructuring Advisory Services. Roth will advise the Company with respect to restructuring options, which may include a restructuring, reorganization or a recapitalization of the Company's 7.75% convertible senior notes due 2012 (a "Restructuring," with each Restructuring or Sale Transaction being a "Transaction"). Roth will also provide advisory services in connection with a liquidation and winding up of the Company that does not involve a Sale Transaction.

(c) Bankruptcy Services. In the event the Company files for bankruptcy protection pursuant to Chapter 11 of the U.S. Bankruptcy Code, at any time during the term of the engagement hereunder, subject to the approval of the Bankruptcy Court, Roth will continue to provide all

services hereunder and render advisory services in respect of the bankruptcy process, which services shall include providing written affidavits as may customarily be required in support of the various filings in such proceeding.

(d) <u>Fairness Opinion.</u> At the written request of the Company, Roth will render a fairness opinion (an "Opinion") to the Company's Board of Directors in conjunction with the Transaction.

The Company understands that Roth will not be responsible for rendering legal, accounting or tax advice and agrees to retain its own legal counsel and accountants concerning any necessary legal, accounting and tax matters.

## 2. Retention

The Company hereby retains Roth as the Company's exclusive financial advisor in connection with the potential Transactions, subject to Section 6 hereof, for a six-month period (the "Engagement Period") commencing on the date hereof.

## 3. Compensation for Services

In exchange for the services provided to the Company by Roth, the Company shall pay to Roth investment banking fees and reimburse Roth for expenses as follows:

(i) <u>Expenses.</u> The Company agrees to reimburse Roth's reasonable out-of-pocket expenses, including legal expenses, not to exceed $25,000 in the aggregate, incurred in connection with its rendering of the services contemplated hereby; any such out-of-pocket expenses in excess of the limit must be approved in advance by the Company.

(ii) <u>Advisory Fee.</u> Promptly after the execution and delivery of this letter agreement, the Company shall pay to Roth $50,000. Subject to any court approvals required, and provided that no notice of termination of this letter agreement shall have been given, if Roth renders services subsequent to a filing by the Company pursuant to Chapter 11 of the U.S. Bankruptcy Code, the Company shall pay to Roth an additional $25,000 per month commencing upon the later of ninety (90) days from the date hereof or the filing of such bankruptcy proceeding (such additional fees, the "Bankruptcy Fees").

(iii) <u>Performance-Based Compensation.</u> In addition to the advisory fees described in Section 5(b) above, the Company shall pay to Roth success fees as follows no later than thirty (30) days following the closing of the applicable transaction:

a. Sale Transaction other than a reverse merger: the greater of (x) 4% of the Transaction Value (as defined in Exhibit II) minus $100,000 or (y) $200,000;

        b. Reverse merger: $200,000; and

        c. Restructuring: $150,000.

No success fees shall be payable in respect of a liquidation and winding up or bankruptcy that does not also involve any of the above described transaction types. In the event there are multiple transactions any success fees already paid will reduce the amount payable in respect of subsequent success fees. For example, if Roth is paid $150,000 in respect of a Restructuring and such restructuring is followed by a reverse merger, the amount payable in respect of such reverse merger would only be $50,000. The success fee(s) payable hereunder shall be further reduced by (x) $150,000, if the Company pays Roth to render an Opinion as described in Section 5(d) below, and/or, if applicable, (y) the aggregate amount of Bankruptcy Fees paid by the Company.

(iv)   Fairness Opinion. In the event that the Company's Board of Directors requests in writing that an Opinion be rendered in connection with a Transaction, Roth will receive a fee of $150,000 for rendering such Opinion. This fee is for our investment banking services related to the Opinion and is in no way conditioned upon the results of our evaluation and analysis or upon the conclusions reached in the Opinion. One-half of the Opinion fee shall be paid to Roth together with the written request for the Opinion by the Company and the balance shall be paid upon Roth's delivery of the Opinion.

## 4. Covenants of the Company

The Company agrees as follows:

(a) This Agreement is duly authorized and validly executed and delivered by the Company, and constitutes a legal, valid and binding agreement of the Company.

(b) In connection with Roth's activities hereunder, the Company agrees to prepare and furnish Roth with all information concerning the Company and its business, prospects, operations, and financial results and condition as Roth reasonably deems appropriate or as may be considered material to any third party involved in a Transaction. In addition, the Company agrees to provide Roth with reasonable access to the Company's accountants, attorneys, consultants and other appropriate agents and representatives. The Company acknowledges that Roth may rely upon the completeness and accuracy of information and data furnished to it by the Company's officers, directors, employees, agents and representatives without an independent verification of such information and data or an appraisal of the Company's assets.

## 5. Confidentiality

Roth agrees that it will not disclose to any person, other than to potential parties to a Transaction and any agents, attorneys, accountants, employees, officers, and directors thereof and of Roth who in each case need to know such information in connection with Roth's engagement hereunder and who are similarly bound to confidentiality, any confidential and non-public information relating to the Company that Roth receives from the Company or its agents, attorneys or accountants in connection with the services rendered hereunder. Except in the case of any disclosures required to be made in a Bankruptcy proceeding, or as may otherwise be provided herein, any advice offered by Roth hereunder shall not be disclosed publicly in any manner without Roth's prior written approval and will be treated by the Company and Roth as confidential. Subject to the foregoing, Roth's advice is not intended for, and should not be relied upon by, other third parties. The Company also agrees that any reference to Roth in any news release or other communication to any party outside the Company is subject to Roth's prior written approval, which approval shall not be unreasonably withheld or delayed. If Roth resigns or is terminated prior to any release or communication, no reference shall be made therein to Roth without its prior written permission. Notwithstanding the foregoing sentences set forth in this Section 5, (i) Roth consents to a description of and the inclusion of the text of its Fairness Opinion in any filing required to be made by the Company with the U.S. Securities and Exchange Commission in connection with a Transaction and in materials delivered to the Company's shareholders (it being understood that Roth shall provide to the Company on a timely basis a description of its Fairness Opinion that complies with the requirements of Item 1015 of Regulation M-A promulgated under the Securities Act of 1933, as amended), (ii) both parties acknowledge that the obligations set forth herein shall not apply where disclosure is required by any federal or state law, rule or regulation or any decision or order of any court or regulatory authority; provided that in such case the disclosing party shall provide adequate notice of any such required disclosures to the other party in order to allow the other party to seek a protective or other appropriate order and (iii) upon execution of the letter agreement, the Company will issue a press release announcing its retention of Roth. This Section 5 shall survive the termination of this Agreement.

## 6. Term of Engagement

Our representation will continue for a period of six (6) months from the date first set forth above; however, either party may terminate the relationship at any time upon thirty days written notice to the other party, and provided further that if either John W. Chambers or Michael A. Margolis should cease being actively involved in this engagement (such event being a "Key Man Event"), the Company shall have the right to terminate the relationship with immediate effect by written notice to Roth Except in the case of an early termination by Roth or by the Company for a Key Man Event, Roth will be entitled to the success fee(s) described in Section 3 (but subject to the limitations therein), if during the six (6) month period after the termination or expiration of Roth's engagement hereunder the Company enters into a Transaction with any of the potential acquirers that (i) were referred to the Company directly by Roth or (ii) engaged in discussions regarding a

Transaction with the Company or Roth during the period that Roth acted as the Company's exclusive financial advisor under this agreement

## 7. Compliance with Applicable Law

In connection with this engagement, the Company and Roth will comply with all applicable federal, state and foreign securities laws and other applicable laws.

## 8. Advertisements

The Company agrees that Roth shall have the right to place advertisements of this engagement in financial and other newspapers and journals, at its own expense and after public announcement by the Company of a Transaction, subject to the Company's prior approval of any such advertisement, which approval shall not be unreasonably withheld.

## 9. Governing Law and Arbitration

This agreement shall be governed by and construed under the laws of the State of New York applicable to contracts made and to be performed entirely within the State of New York. Any dispute, claim or controversy arising out of or relating to this agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by binding arbitration in the City and County of New York, before one arbitrator. The arbitration shall be administered by JAMS. Judgment on the award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction. Each Party will bear its own costs for arbitration, except that the prevailing party in arbitration shall be entitled to reasonable attorneys' fees. The provisions of this Section 9 shall survive any termination of this agreement.

## 10. Severability

Any determination that any provision of this Agreement may be, or is, unenforceable shall not affect the enforceability of the remainder of this Agreement.

## 11. Counterparts

This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

## 12. Third Party Beneficiaries

This Agreement has been and is made solely for the benefit of the Company, Roth and the other Indemnified Persons referred to in Section 15 below and their respective successors and assigns, and no other person shall acquire or have any rights under or by virtue of this Agreement.

### 13. Independent Contractor

Roth is and at all times during the term hereof will remain an independent contractor, and nothing contained in this letter agreement will create the relationship of employer and employee or principal and agent as between the Company and Roth or any of its employees. Without limiting the generality of the foregoing, all final decisions with respect to matters about which Roth has provided services hereunder shall be solely those of the Company. Roth shall have no authority to bind the Company in any respect.

### 14. Indemnification

The Company agrees to indemnify Roth as set forth in Exhibit I attached hereto. The indemnification provisions set forth in Exhibit I shall remain operative and in full force and effect regardless of termination or expiration of this Agreement, or the consummation of any Transaction.

### 15. Succession

This Agreement shall be binding upon and inure to the benefit of the Company, Roth, the Indemnified Persons and their respective successors, assigns, heirs and personal representatives.

If the foregoing terms correctly set forth our Agreement, please confirm this by signing and returning to Roth the duplicate copy of this letter. Thereupon this letter, as signed in counterpart, shall constitute our Agreement on the subject matter herein.

**ROTH CAPITAL PARTNERS, LLC**

By: _____
Michael Margolis, R.Ph.
Managing Director


Confirmed and Agreed to this 11th day of December 2009.

**VION PHARMACEUTICALS, INC**

By: _____
Howard Johnson
President and CFO

EXHIBIT I

Indemnification Provisions

The Company agrees to indemnify and hold harmless Roth and its affiliates (as defined in Rule 405 under the Securities Act of 1933, as amended) and their respective directors, officers, employees, agents and controlling persons (Roth and each such person being an "Indemnified Party") from and against all losses, claims, damages and liabilities (or actions, including shareholder actions, in respect thereof), joint or several, to which such Indemnified Party may become subject under any applicable federal or state law, or otherwise, which are related to or result from the performance by Roth of the services contemplated by or the engagement of Roth pursuant to this Agreement and will promptly reimburse any Indemnified Party for all reasonable expenses (including reasonable counsel fees and expenses) as they are incurred in connection with the investigation of, preparation for or defense arising from any threatened or pending claim, whether or not such Indemnified Party is a party and whether or not such claim, action or proceeding is initiated or brought by the Company. The Company will not be liable to any Indemnified Party under the foregoing indemnification and reimbursement provisions (i) for any settlement by an Indemnified Party effected without its prior written consent (not to be unreasonably withheld); or (ii) to the extent that any loss, claim, damage or liability is found in a final, non-appealable judgment by an arbitrator or court of competent jurisdiction to have resulted primarily from the Company's willful misconduct or gross negligence. The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its security holders or creditors related to or arising out of the engagement of Roth pursuant to, or the performance by Roth of the services contemplated by, this Agreement except to the extent that any loss, claim, damage or liability is found in a final, non-appealable judgment an arbitrator or by a court of competent jurisdiction to have resulted primarily from Roth's willful misconduct or gross negligence.

Promptly after receipt by an Indemnified Party of notice of any intention or threat to commence an action, suit or proceeding or notice of the commencement of any action, suit or proceeding, such Indemnified Party will, if a claim in respect thereof is to be made against the Company pursuant hereto, promptly notify the Company in writing of the same. Any failure or delay by an Indemnified Party to give the notice referred to in this paragraph shall not affect such Indemnified Party's right to be indemnified hereunder, except to the extent that such failure or delay causes actual harm to the Company, or prejudices its ability to defend such action, suit or proceeding on behalf of such Indemnified Party. In case any such action is brought against any Indemnified Party and such Indemnified Party notifies the Company of the commencement thereof, the Company may elect to assume the defense thereof, with counsel reasonably satisfactory to such Indemnified Party, and an Indemnified Party may employ counsel to participate in the defense of any such action provided, that the employment of such counsel shall be at the Indemnified Party's own expense, unless (i) the employment of such counsel has been authorized in writing by the Company, (ii) the Indemnified Party has reasonably concluded (based upon advice of counsel to the Indemnified Party) that there are legal defenses available to the Indemnification Party that are not available to the Company, or that there exists a conflict or potential conflict of interest (based upon advice of counsel to the Indemnified Party) between the Indemnified Party and the Company that makes it impossible or inadvisable for counsel to the Company to conduct the defense of both parties (in which case the Company will not have the right to direct the defense of such action on behalf of the Indemnified Party), or (iii) the Company has not in fact employed counsel reasonably satisfactory to the Indemnified Party to assume the defense of such action within a reasonable time after receiving notice of the action, suit or proceeding, in each of which cases the reasonable fees, disbursements and other

charges of such counsel will be at the expense of the Company; provided, further, that in no event shall the Company be required to pay fees and expenses for more than one firm of attorneys (and local counsel) representing Indemnified Parties.

If the indemnification provided for in this Agreement is for any reason held unenforceable by an Indemnified Party, the Company agrees to contribute to the losses, claims, damages and liabilities for which such indemnification is held unenforceable (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and Roth on the other hand, of a Transaction whether or not a Transaction is consummated or, (ii) if (but only if) the allocation provided for in clause (i) is for any reason unenforceable, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of the Company, on the one hand and Roth, on the other hand, as well as any other relevant equitable considerations. The Company agrees that for the purposes of this paragraph the relative benefits to the Company and Roth of a Transaction as contemplated shall be deemed to be in the same proportion that the total value received or contemplated to be received by the Company in connection with a Transaction bear to the fees paid or to be paid to Roth under this Agreement. Notwithstanding the foregoing, the Company expressly agrees that Roth shall not be required to contribute any amount in excess of the fees paid to Roth hereunder (excluding reimbursable expenses).

The Company agrees that without Roth's prior written consent, which shall not be unreasonably withheld, it will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action or proceeding in respect of which indemnification reasonably likely could be sought under the indemnification provisions of this Agreement (whether or not Roth or any other Indemnified Party is an actual or potential party to such claim, action or proceeding), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Party from all liability arising out of such claim, action or proceeding.

In the event that an Indemnified Party is requested or required to appear as a witness in any action brought by or on behalf of or against the Company in which such Indemnified Party is not named as a defendant, the Company agrees to promptly reimburse Roth on a monthly basis for all expenses reasonably incurred by it in connection with such Indemnified Party's appearing and preparing to appear as such a witness, including, without limitation, the reasonable fees and disbursements of its legal counsel.

If multiple claims are brought with respect to at least one of which indemnification is permitted under applicable law and provided for under this Agreement, the Company agrees that any judgment or arbitration award shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for, except to the extent the judgment or arbitration award expressly states that it, or any portion thereof, is based solely on a claim as to which indemnification is not available.

# EXHIBIT II

## Definition of Transaction Value

In the context of this Agreement, "Transaction Value" means the aggregate value of all cash, cash equivalents, securities, and any other forms of payment that the Company receives at the closing of a Transaction, but shall not include any contingent payments.

If part or all of the Transaction Value in a Sale Transaction is represented by securities, the value thereof for the purpose of computing the fees shall be determined as follows:

(i) For securities which are publicly traded prior to the consummation of such transaction, the average last sale price for such securities for the ten trading days prior to the consummation of such transaction;

(ii) For newly-issued, publicly-traded securities, the average last sale price for such securities for ten trading days subsequent to the consummation of such transaction, with such portion of the fees being payable the eleventh trading day subsequent to the consummation of such transaction; and

(iii) For securities for which no market exists, the mutual agreement of the Company and Roth as determined prior to the closing of such transaction.